1  ROBERT H. ROTSTEIN (SBN 72452),
   rxr@msk.com
2  ELAINE K. KIM (SBN 242066),
   ekk@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Defendants,
   James Cameron, Lightstorm Entertainment, Inc.,
7  Twentieth Century Fox Film Corporation,
   Dune Entertainment LP

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

| 12 | ELIJAH SCHKEIBAN, an individual, | CASE NO.  CV 12-0636-R (MANx) |
|----|----|----|
| 13 | Plaintiff, | Honorable Manuel L. Real |
| 14 | v. | **NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES CAMERON, LIGHTSTORM ENTERTAINMENT, INC., TWENTIETH CENTURY FOX FILM CORP. AND DUNE ENTERTAINMENT LP TO DISMISS THE COMPLAINT IN ITS ENTIRETY PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| 15 | JAMES CAMERON, an individual; LIGHTSTORM ENTERTAINMENT, INC., a California corporation; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; DUNE ENTERTAINMENT LP, a Delaware limited partnership, | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | Defendants. | |
| 20 | | **[REQUEST FOR JUDICIAL NOTICE; DECLARATION OF PAMELA BURCHETTE; DECLARATION OF JAMES BERKLEY; NOTICE OF MANUAL FILING; NOTICE OF LODGING; AND PROPOSED ORDER FILED CONCURRENTLY HEREWITH.]** |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | Time:    10 a.m. |
| 25 | | Date:    May 1, 2012<br>Ctrm.:    8 |

26

27

28

Mitchell
Silberberg &
Knupp LLP

4527979.1

1   TO THE DISTRICT COURT, ALL PARTIES AND THEIR ATTORNEYS

2  OF RECORD:

3   PLEASE TAKE NOTICE that on May 1, 2012, at 10 a.m., or as soon

4  thereafter as the matter may be heard in Courtroom 8, located at 312 N. Spring

5  Street, Los Angeles, CA 90012, Defendants James Cameron, Lightstorm

6  Entertainment, Inc., Twentieth Century Fox Film Corp. and Dune Entertainment

7  LP will and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of

8  Civil Procedure, for an order dismissing, with prejudice, in their favor Plaintiff

9  Elijah Scheikban's Complaint in its entirety.

10   This motion is made on the ground that Plaintiff's claim for relief for

11  copyright infringement (First Claim) fails because the works at issue, as a matter of

12  law, are not substantially similar in copyrightable expression.  Plaintiff's copyright

13  infringement claim also fails because Plaintiff has not sufficiently alleged that

14  Defendants had access to Plaintiff's works.  Because no infringement occurred,

15  Plaintiff's claims for contributory copyright infringement (Second Claim) and

16  vicarious copyright infringement (Third Claim) also fail due to their dependence

17  upon the success of the direct copyright infringement claim.

18   This motion is based upon this Notice of Motion; the attached Memorandum

19  of Points and Authorities; the concurrently submitted Declarations of Pamela

20  Burchette and James Berkley, Notice of Lodging of Authority Cited in Brief, and

21  Request For Judicial Notice; all pleadings and other records on file in this action;

22  and such further evidence and arguments as may be presented at or before any

23  hearing on the motion.

24  DATED: March 22, 2012          MITCHELL SILBERBERG & KNUPP LLP

25                                 By: s/Robert H. Rotstein
                                       _____
26                                     Robert H. Rotstein
                                       Attorneys for Defendants,
27                                     James Cameron, Lightstorm Entm't, Inc.,
                                       Twentieth Century Fox Film Corp., Dune
28                                     Entm't LP

Mitchell
Silberberg &
Knupp LLP

4527979.1

1

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL ALLEGATIONS AND THE WORKS AT ISSUE ..................... 1

       A.     *Avatar* ................................................................................................ 1

       B.     *Bats and Butterflies* ......................................................................... 6

III.   Rule 12(b)(6) Standards In Copyright cases ................................................ 10

IV.    AS A MATTER OF LAW, *AVATAR* AND *BATS AND BUTTERFLIES* ARE NOT SUBSTANTIALLY SIMILAR. ....................... 12

V.     THE COMPLAINT FAILS TO PLEAD ACCESS. .................................... 23

VI.    THE SECONDARY LIABILITY CLAIMS SHOULD BE DISMISSED. ............................................................................................... 25

VII.   CONCLUSION .............................................................................................. 25

Mitchell Silberberg & Knupp LLP

4527979.1

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)..................................................................12

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ...........................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................11

*Benay v. Warner Bros. Entm't, Inc.*,
    607 F.3d 620 (9th Cir. 2010)...........................................................passim

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir.),
    *cert. denied* 474 U.S. 826 (1985) ...........................................13, 14, 16

*Bisson-Dath v. Sony Comp. Entm't Am., Inc.*,
    694 F. Supp. 2d 1071 (N.D. Cal. 2010) ........................10, 11, 13, 18

*Campbell v. The Walt Disney Co.*,
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) ........................................passim

*Capcom Co., Ltd, v. The MKR Group, Inc.*,
    No. C 08-0904 RS, 2008 U.S. Dist. LEXIS 83836
    (Oct. 10, 2008)............................................................................11, 22

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002).............................................................13, 23

*Christianson v. West Publ'g Co.*,
    149 F.2d 202 (9th Cir. 1945)..................................................................11

*Clay v. Cameron*,
    No. 10-22203-CIV-JORDAN, at 3-4 (S.D. Fla. Oct. 20, 2011) ............11, 24

*Feldman v. Twentieth Century Fox Film Corp.*,
    723 F. Supp. 2d 357 (D. Mass. 2010) ...............................................12, 24

Mitchell
Silberberg &
Knupp LLP

4527979.1

i

TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

*Funky Films, Inc. v. Time Warner Entm't, Inc.*,
    462 F.3d 1072 (9th Cir. 2006)................................................................passim

*Goldberg v. Cameron*,
    787 F. Supp. 2d 1013 (N.D. Cal. 2011) .........................................25

*Herzog v. Castle Rock Entm't*,
    193 F.3d 1241 (11th Cir. 1999)....................................................14

*Hill v. Gaylord Entm't*,
    85 U.S.P.Q.2D (BNA) 1688 (S.D. Fla. 2008)........................12, 24

*Identity Arts v. Best Buy Enters. Serv's Inc.*,
    No. C 05-4656 PJH, 2007 U.S. Dist. LEXIS 32060 (N.D. Cal.
    Ap. 18, 2007), *aff'd* 320 Fed. Appx. 772 (9th Cir. 2009) ............11

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008)........................................10

*Jason v. Fonda*,
    698 F.2d 966 (9th Cir. 1982).........................................................23

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994)...................................................14, 16

*Merrill v. Paramount Pictures Corp.*,
    Case No. CV 05-1150 SVW, 2005 U.S. Dist. LEXIS
    454012005 **4, 20-26 (C.D. Cal. Dec. 19, 2005) ........................25

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
    586 F. Supp. 1346 (C.D. Cal 1984)..............................................25

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
    590 F. Supp. 2d 500 (S.D.N.Y. 2008)...........................................23

*Olson v. Nat'l Broad. Co.*,
    855 F.2d 1446 (9th Cir. 1988).......................................................23

*Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) ............................................................11

Mitchell
Silberberg &
Knupp LLP

4527979.1

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Reed Elsevier, Inc. v. Muchnick*,
   130 S. Ct. 1237 (2010) ..................................................................... 6

*Rosenfeld v. Twentieth Century Fox Film Corp.*,
   No. CV 07-7040 AHM, 2009 U.S. Dist. LEXIS 9305
   (C.D. Cal. Jan. 28, 2009) .............................................................. 11

*Schwarz v. U.S.*,
   234 F.3d 428 (9th Cir. 2000) .................................................. 10, 14

*Stewart v. Wachowski*,
   574 F. Supp. 2d 1074 (C.D. Cal. 2005) ....................................... 24

*Stromback v. New Line Cinema*,
   384 F.3d 283 (6th Cir.), *reh'g denied* No. 02-2387,
   2004 U.S. App. LEXIS 21704 (6th Cir. Oct. 8, 2004) ................. 21

*Thomas v. The Walt Disney Co.*,
   No C-07-4392 CW, 2008 U.S. Dist. LEXIS 14643 (N.D. Cal.
   Feb. 14, 2008), *aff'd* 337 Fed. Appx. 694 (9th Cir. 2009) ..................... 11, 12

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001) ............... 23

*Van v. Cameron*,
   No. 10-cv-1051(AJB)(WVG), at 3-7 (S.D. Cal. Sept. 26, 2011) ........... 11, 12

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985),
   *aff'd* 784 F.2d 44 (2d Cir.), *cert. denied* 476 U.S. 1159 (1986) .................. 12

*Well-Made Toy Mfg. v. Goffa Int'l Corp.*,
   354 F. 3d 112 (2d Cir. 2003) ......................................................... 6

*Zella v. The E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) .................................... 11, 12

# <u>STATUTES</u>

17 U.S.C. §411(a) .................................................................................. 6

Mitchell
Silberberg &
Knupp LLP

4527979.1

iii

# **TABLE OF AUTHORITIES**

**Page(s)**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 10

## **OTHER AUTHORITIES**

4 M.B. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT
     §13.02[A] (2011)..............................................................23, 24, 25

Mitchell
Silberberg &
Knupp LLP

4527979.1

iv
TABLE OF AUTHORITIES

## I.      <u>INTRODUCTION</u>

To prevail in this copyright infringement action, Plaintiff Elijah Schkeiban must establish (i) that Defendants' award winning motion picture *Avatar* is substantially similar in copyrightable expression to his script *Bats and Butterflies* and (ii) that Defendants had access to his script before conceiving of and creating *Avatar*.  Plaintiff's Complaint fails to set forth a plausible claim in either respect. Far from being substantially similar, as a matter of law the works differ markedly in plot, sequence of events, characters, theme, setting, dialogue, mood and pace, and thus fail to satisfy the Ninth Circuit's "extrinsic test" for substantial similarity. Moreover, Plaintiff failed to plead sufficient facts to show that Defendants had access to (*i.e.*, a reasonable opportunity to read) his script.  For these reasons, the entire Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).[1] Furthermore, dismissal should be without leave to amend because it would be futile for Plaintiff to attempt to plead around the unavoidable fact that the works, which are incorporated into the Complaint, are not substantially similar as a matter of law.

## II.     <u>FACTUAL ALLEGATIONS AND THE WORKS AT ISSUE</u>

### A.      <u>*Avatar*</u>

James Cameron wrote and directed *Avatar*, an award-winning motion picture that was produced and released worldwide in December 2009 by Twentieth Century Fox Film Corporation, and is now the highest-grossing film of all time.[2] *Avatar* takes place in 2154 A.D.  After a brief opening on Earth in a bleak futuristic setting, the film is almost entirely set on Pandora, a moon in the Alpha Centauri star system.  Two primary groups occupy Pandora: (i) human beings, who

---

[1]Because the claims for contributory infringement (Second Claim for Relief) and vicarious infringement (Third Claim for Relief) require proof of direct infringement, Plaintiff's failure to plead access and inability to plead substantial similarity make these claims deficient as well.

[2] Defendants Dune Entertainment, Inc. and Lightstorm Entertainment, Inc. are production companies that were involved with the development of *Avatar*.

Mitchell Silberberg & Knupp LLP

4527979.1

are officers, employees, and other affiliates (including a private security force called "Sec-Ops") of RDA Corporation ("RDA"), a company responsible for mining the fictional "unobtanium," a valuable mineral used on Earth as an energy source and found only on Pandora; and (ii) the Na'vi, an extremely tall, agile, blue-skinned group of preternaturally strong humanoids who are indigenous to Pandora and who speak their own language. *Avatar* concerns the threat posed by the RDA's mining colony to the Na'vi way of life.

The film's title comes from the central role that "avatars" play in the plot. Avatars are genetically engineered Na'vi-human hybrid bodies that look like Na'vi, but are controlled via a mental link between humans and the Na'vi bodies. Avatars are inextricably intertwined with their human operators. Only the original human operator can link to and control his or her specific avatar. Under RDA's Avatar Program, scientists use avatars to communicate with and learn about the Na'vi. The goal is to persuade the Na'vi to accept RDA's mining operations.

*Avatar*'s protagonist is Jake Sully, a 22-year-old paraplegic former marine. At the beginning of the film, Sully is depressed and hopeless. Earth in 2154 is a dark and environmentally devastated place. Shortly after the film opens, Sully learns that his twin brother, Tom, has been killed in a mugging. Representatives of RDA approach the grieving Sully and offer him a job. It turns out that Tom was an avatar operator in RDA's Avatar Program, and that RDA had spent millions creating Tom's avatar. With Tom's untimely death, the only way that RDA can use Tom's avatar is for Sully, who has the same genetic makeup of his late brother, to become an avatar operator.

Sully accepts RDA's offer in exchange for money that he plans to use to finance expensive surgery to cure his paraplegia. He arrives on Pandora with a number of other Sec-Ops security personnel after nearly six years of space travel spent in a cryogenic sleep. Sully rolls off the spaceship in his wheelchair and, like

all other humans on Pandora, wears breathing gear because Pandora's atmosphere is toxic to humans.  Forebodingly, the mining colony is named "Hell's Gate."

RDA personnel usher Sully and the new Sec-Ops arrivals into a security briefing by the head of Sec-Ops, Colonel Miles Quaritch.  Quaritch is physically imposing (scarred and in excellent physical condition).  He explains that Pandora is one of the most dangerous places in the universe and that the Na'vi and the animals of Pandora are innate killers.  The Na'vi live in the forest.  RDA personnel live in the mining colony.  An extensive security apparatus prevents the Na'vi from encroaching on the separated mining colony.  RDA personnel go out of the colony solely on structured mining excursions, always backed by Sec-Ops forces.  Later in the film, Quaritch takes Sully aside and offers him a deal:  if Sully will secretly provide Quaritch with intelligence on the Na'vi from the Avatar Program, Quaritch will make sure that Sully returns to Earth early and, at no cost to Sully, receives the expensive surgery to cure his paraplegia.

Sully next meets Dr. Grace Augustine, head of the Avatar Program, and other scientists, including Dr. Norm Spellman.  Dr. Augustine questions Sully's ability to replace his brother, Tom, and considers Sully to be a Marine "meathead" as compared with Tom, the brilliant scientist and linguist.  Dr. Augustine distrusts the non-scientist RDA personnel, especially the Sec-Ops.

Unbeknownst to Sully, things on Pandora are going badly for RDA.  Although unobtanium is extremely valuable, it cannot be efficiently and inexpensively mined and returned to Earth.  As such, RDA is under tremendous pressure to produce unobtanium.  However, the Na'vi are making operations difficult.  Unobtanium is strip-mined, destroying the environment.  The Na'vi maintain a close, symbiotic relationship to Pandora and its environment.  To protect Pandora, they routinely sabotage RDA mining operations.  The conflict over mining is central to *Avatar*'s plot.

1   RDA management and Sec-Ops believe that only military action will quell

2   the Na'vi unrest and thereby permit cost-effective mining.  In contrast, RDA

3   scientists, led by Dr. Augustine, maintain that science and dialogue via the Avatar

4   Program will lead to a peaceful breakthrough with the Na'vi.  However, time is

5   running out for the Avatar Program.  If a breakthrough does not occur soon after

6   Sully's arrival, RDA will proceed with a military option and crush the Na'vi.

7       Sully gets thrown into the fray.  He initiates his avatar and travels along with

8   other avatars to explore the Na'vi forest.  However, Sully gets separated from the

9   group.  A female Na'vi named Neytiri finds Sully in the forest.  She reluctantly

10   brings him back to her clan (one of many Na'vi clans on Pandora), which resides at

11   a place known as "Home Tree," which sits atop one of Pandora's most extensive

12   unobtanium deposits.  Other members of her clan are her father Eytukan, the clan

13   chief, and her mother Mo'at, the clan's spiritual leader.  Eventually, Neytiri

14   becomes Sully's companion and love interest.  However, Neytiri initially distrusts

15   Sully, and the clan spares his life only on the orders of Mo'at, who believes that

16   Sully may be blessed by Eywa, the Na'vi deity made up of all living things.  This

17   is so because Neytiri witnessed hundreds of beautiful, delicate "woodsprites" (a

18   cross between a snowflake and a floating jellyfish) alight on Sully; the Na'vi

19   believe this a blessing.  Mo'at orders Neytiri to teach Sully the Na'vi ways.

20       After numerous fits and starts, Sully grows close to Neytiri and the Na'vi.

21   He undertakes arduous physical tasks[3] and attempts to learn the ways of the Na'vi,

22   including understanding their warrior code, their ethics, their history, their

23   spirituality, and their relationship to Pandora.  Sully begins to appreciate that

24   although the Na'vi are skilled warriors, they prefer to live in harmony with nature

25

26   [3] For example, Sully must "select" a banshee, a large bird-like aerial creature.  For
    a Na'vi warrior to select a banshee, the warrior must locate a banshee that intends

27   to kill him and then physically dominate and mount the banshee.  Once mounted,
    the warrior must immediately undertake a daring flight aboard the banshee.

28

Mitchell
Silberberg &
Knupp LLP

4527979.1

MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6)

and to worship Eywa.  Neytiri and Sully grow closer and eventually fall in love.
Sully passes all of the Na'vi tests and is initiated into the clan.  After his initiation,
Sully and Neytiri each choose the other as a life-long mate while visiting the Tree
of Voices.  This tree stores the memories of the Na'vi ancestors, which the Na'vi
can access by attaching their hair braids to dangling material on the tree.

Throughout his training with the Na'vi, Sully returns on a nightly basis to
the Avatar Program lab.  While Sully's avatar-body lays motionless among the
sleeping Na'vi, he eats, meets with his fellow scientists, and keeps track of his
experiences and thoughts in a running video diary.  Sully becomes torn between,
on the one hand, his promise to Quaritch to reveal intelligence aimed at an eventual
military conquest of the Na'vi and his desire to have surgery for his paraplegia,
and, on the other hand, his growing allegiance to the Avatar Program and his love
for Neytiri and the Na'vi people.  When Dr. Augustine discovers that Sully is
sharing information with Quaritch, she moves the Avatar Program to a remote
facility located in the hanging mountains of Pandora so they can continue their
work free of Quaritch's influence.  The facility is little more than a small trailer
that contains the tools necessary to connect the scientists with their avatars.

By the film's end, Sully's allegiance has switched to the Avatar Program and
the Na'vi.  He begins sabotaging RDA's destructive mining operations.  RDA
management, led by Administrator Parker Selfridge, and Sec-Ops, led by Quaritch,
conclude that a military solution is the only option.  They execute a violent plan to
destroy Home Tree so as to drive away the Na'vi and secure the area's unobtanium
deposits.  When Sully tells the Na'vi of the pending attack in a last-ditch attempt to
avert conflict, Neytiri's clan becomes angry with Sully for not disclosing the
danger sooner, and decides to attack the advancing Sec-Ops soldiers.  The battle is
a resounding defeat for the Na'vi.  Home Tree is destroyed and Eytukan is killed.
The clan retreats to the Tree of Souls, their sacred homeland.

Sully and Dr. Augustine become Quaritch's prisoners.  With the help of a Sec-Ops pilot, Trudy, who switches sides, Dr. Augustine and Sully escape, but Dr. Augustine is wounded.  Sully recognizes that someone needs to organize and lead all of the Na'vi clans against RDA and Sec-Ops.  He tames a particularly large and legendary banshee referred to as a "Toruk."  This accomplishment convinces the Na'vi that Jake can be trusted.  The Na'vi then attempt to resuscitate Dr. Augustine in a ritual by the Tree of Souls, but they fail and Augustine dies.

Jake recruits thousands of warriors from neighboring Na'vi clans to go to war.  The Na'vi fight bravely, but are on the verge of final defeat when the Pandoran wildlife suddenly joins the attack and overwhelms Sec-Ops.  There is a final fight between Sully and Quaritch, which Sully wins when Neytiri comes to his aid, outside of the trailer containing Sully's sleeping human body.  RDA, including Selfridge, and Sec-Ops are expelled from Pandora.  Many of the Avatar Program members are permitted to stay.  The Na'vi perform a ritual on Sully by which he is permanently transferred from his human body into his avatar.

### B.   *Bats and Butterflies*

According to the Complaint, Plaintiff Elijah Schkeiban created "a franchise of products" called *Bats and Butterflies* in 1988.  Compl. ¶10.  He later wrote a "script" under the same title.[4]  The script was registered with the U.S. Copyright Office.[5]  *Id.* ¶12.  Beginning in 2005, Schkeiban allegedly distributed the script "to

---

[4] A copy of the registered script is attached as Exhibit A to the Burchette Declaration filed in support of Defendants' Request for Judicial Notice.

[5] Plaintiff's Complaint apparently also purports to rely on a novel of the same title. Compl. ¶10.  However, because the novel was never registered with the U.S. Copyright Office, allegations based on the novel (and other unregistered works) are irrelevant. *See Well-Made Toy Mfg. v. Goffa Int'l Corp.*, 354 F. 3d 112, 116 (2d Cir. 2003) ("Because Well-Made did not register its copyright in the 48-inch Sweetie Mine, section 411(a) barred the district court from considering whether that copyright had been infringed by Goffa."), *abrogated on different issue by Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243 (2010); 17 U.S.C. §411(a) ("[N]o civil action for infringement of copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made (…continued)

1    numerous individuals in the film industry" including "Romar Entertainment and

2    Billy Zane, Union Entertainment and Richard Leibowitz, and Brian Singer." *Id.*

3    ¶13.  Plaintiff does not allege that he distributed *Bats and Butterflies* to James

4    Cameron or anyone else involved in creating *Avatar*.

5        *Bats and Butterflies* is a children's story that is set in the present day in an

6    imaginary land populated by two species: bats and butterflies.  Both species have

7    human characteristics, but are not humans, and also have wings and can fly.

8    Butterflies only emerge during daylight because bats, who cannot tolerate the sun,

9    stalk, enslave, and kill butterflies (and caterpillars who have not yet matured into

10   butterflies) if they find them out at night.

11        There are no human beings in the land of the bats and butterflies (called

12   "Altair"), with the exception of the story's protagonist, a schoolboy named Joshua.

13   Joshua is a bullied twelve-year-old with no friends.  *B&B* 2-6.[6]  He is grieving the

14   death of his father and quarreling with his mother.  One night, after Joshua flees

15   from bullies, he finds himself hiding in a tunnel in a forest near his home.  He

16   walks toward a light, and is magically transported to a seemingly different land,

17   though that land is in the same forest that is near his house.  *B&B* 10-11.

18        Joshua, who continues to be fearful, scurries to hide from approaching

19   voices.  *B&B* 11-13.  He soon witnesses a butterfly initiation ceremony involving

20   Gabriella, a caterpillar princess who is in line to become queen of the butterflies.

21

22   (…continued)
   in accordance with this title.").  In any event, nothing in Plaintiff's unregistered

23   novel would change the conclusion that Plaintiff cannot state a claim for copyright
   infringement.  In addition to the unregistered novel, Plaintiff also claims to have

24   registered a "treatment" for *Bats and Butterflies*.  Compl. ¶12.  Although the
   Copyright Office lost the deposit copy filed by Plaintiff (*see* Burchette Decl. ¶3,

25   Ex. B), the Complaint does not allege that the treatment contains any material not
   contained in the script.  In summary, only allegations concerning the script of *Bats*

26   *and Butterflies* are relevant to this motion to dismiss.

27   [6] *B&B* refers to the *Bats and Butterflies* script attached as Exhibit A to the
   Burchette Declaration.  *See supra* n. 4.

1   *B&B* 14-16.  As the ceremony concludes, the sun begins to set and bats attack the

2   butterflies.  *B&B* 18.  A battle ensues in which a butterfly knight (Kokopelli), a

3   brave but reckless caterpillar (Ziggy), and others, fight off the bats and defend the

4   princess.  The butterflies are successful, but an important crystal, the Eye of

5   Sunshine (also called the Eye of Light), falls into the lake.  *B&B* 20.

6        At the battle's end, Ziggy discovers frightened young Joshua hiding behind a

7   tree.  *B&B* 21.  Ziggy captures Joshua and brings him back to Galina, queen of the

8   butterflies.  *B&B* 22-26.  Galina explains that she is the last remaining queen of the

9   butterfly race.  She brought Joshua to Altair to fulfill a prophecy.  He is to aid

10  princess Gabriella in her quest to mature into a queen butterfly at the Mountain of

11  Light (also called the Mountain of Sunshine).  *B&B* 31-33.

12       Although Joshua's frailty causes Gabriella to doubt that he can help the

13  butterflies (*B&B* 32, 36), Galina and Kokopelli convince Gabriella to give him a

14  chance.  Gabriella soon befriends Joshua, and introduces him to life with the

15  butterflies in the queen's castle.  *B&B* 36-44.  They, along with Ziggy and

16  Kokopelli, go on adventures and fly on the backs of more mature butterflies,

17  including Gabriella's servant, Guss.  On one adventure, Joshua retrieves the Eye of

18  Light from the lake.  *B&B* 48-51.  Gabriella needs the Eye to succeed in her quest

19  to become a mature butterfly, but butterflies and caterpillars cannot swim.  *B&B*

20  44.  Summoning courage, Joshua dives deep into the lake and struggles to hold his

21  breath long enough to reach the bottom.  He succeeds and earns Gabriella's

22  gratitude and respect.

23       Meanwhile, the bats are in their dark, dank, mountain lair planning how to

24  prevent Gabriella from becoming queen.  *B&B* 26.  Sirus, the king of the bats,

25  wants to destroy the butterfly castle and enslave the butterflies.  Another bat,

26  Sardonique, covets the silk produced by butterflies and wants to use it for a royal

27  wardrobe for herself and to spruce up the "trash pit" of a cave Sirus inhabits. *B&B*

28

Mitchell
Silberberg &
Knupp LLP

4527979.1

MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6)

45-48, 90.  Sirus wants to marry Sardonique, so he accedes to her wishes.  He instructs his army's leader, Shihan, to do his dirty work by kidnapping Gabriella, whom other butterflies would blindly follow into the bats' layer.  *B&B* 58.

As Gabriella, Joshua, Ziggy, Kokopelli, and others begin the journey to the Mountain of Sunshine, the bats lie in wait.  *B&B* 52.  Gabriella's caravan enters a series of treacherous caves called the Dual Threshold and then emerges into a dense wooded area referred to as Destiny Forest.  *B&B* 55-61.  The canopy of the forest is so thick that little sunlight reaches the path.

Kokopelli explains that if the bats capture Gabriella before she matures, "evil would rule forever."  *B&B* 65-66.  But if Gabriella succeeds in her quest, Sirus will be powerless against her, and she can preserve the balance between the bats and the butterflies that is demanded by their common ancestors.

The bats attack the caravan in the darkness of the forest.  *B&B* 69-72. Gabriella is wounded.  The group escapes by cutting holes in the forest canopy to allow sunlight in.  Ziggy and Joshua go ahead to look for a path out of the forest. By luck or fate, they come across a hermit, who leads the caravan out of the forest into a swamp at the base of the Mountain of Sunshine.  *B&B* 73-78.  There, the bats locate and attack the caravan again.  Sardonique captures Ziggy, who stands to fight in order to give Gabriella time to escape.  *B&B* 82-83.  However, Shihan captures Gabriella, who now resides inside a cocoon she has created for herself in preparation for their arrival at the Mountain of Sunshine.

It appears that Sirus will succeed in enslaving the butterflies.  But Joshua conceives of a new plan.  *B&B* 88-89.  He has a caterpillar wrap him in a silk cocoon so that he can be carried into the bats' cave undetected.  *B&B* 91-92.  After eluding Sirus, Joshua snatches Gabriella's cocoon and runs.  He then smashes a hole in the wall of the cave, causing sunlight to enter and kill Shihan.  Sirus is furious.  He summons all of his powers to cause dark clouds to fill the sky and

1  block out the sun.  *B&B* 99-100.  He then leads his army out into the day to prevent

2  Gabriella from reaching her destiny.  More fighting erupts, and Ziggy kills

3  Sardonique.  But Sirus catches up with Joshua and the butterflies in the Temple of

4  Sunshine on the Mountain of Light.  *B&B* 102-103.

5  Joshua hides from Sirus to protect Gabriella.  Sirus attempts to deceive

6  Joshua by offering to bring his father back to life in exchange for Joshua's

7  surrender.  Angered by Sirus' trickery, Joshua emerges from hiding and screams at

8  Sirus.  *B&B* 105.  It looks as if Sirus will win the day, but Kokopelli uses the Eye

9  of Light to cause sunshine to break through the clouds.  The light strikes

10  Gabriella's cocoon, and Gabriella emerges as a queen butterfly.  *B&B* 107-109.

11  Sirus is forced to kneel to her power.  After a celebration, Joshua returns home to

12  his mother.  *B&B* 113-114.  He learns he has only been gone for two hours.

13  ## III.   RULE 12(B)(6) STANDARDS IN COPYRIGHT CASES

14  While on a motion to dismiss, a court must accept the facts pled as true and

15  draw all reasonable inferences in favor of a plaintiff, a "court need not accept as

16  true [] allegations that contradict facts that may be judicially noticed by the

17  court[.]"  *Schwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).  A court should

18  "read[] the complaint as a whole, together with matters appropriate for judicial

19  notice, rather than isolating allegations and taking them out of context." *In re*

20  *Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008).

21  To prevail in a copyright infringement action, a plaintiff must prove (1)

22  ownership of a copyright in a work and (2) copying by a defendant of original

23  elements of the work.  *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th

24  Cir. 2010).  "A plaintiff may establish copying either (1) by presenting direct

25  evidence of copying or (2) by showing that the defendant had access to the work

26  and that the works at issue are substantially similar."  *Bisson-Dath v. Sony Comp.*

27  *Entm't Am., Inc.*, 694 F. Supp. 2d 1071, 1078 (N.D. Cal. 2010), *aff'd and adopted*

Mitchell
Silberberg &
Knupp LLP

4527979.1

28

MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6)

*by*, 653 F.3d 898 (9th Cir. 2011) (published without opinion).

When considering a motion to dismiss an infringement claim for lack of substantial similarity, a court may "take judicial notice of generic elements of creative works," as well as "documents [such as copies of works] which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" *Zella v. The E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007) (internal citation omitted). A court will dismiss a claim where the works at issue are in the record and it is apparent from the pleadings that the works are not substantially similar as a matter of law. *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-5 (2d Cir. 2010); *see also, e.g.*, *Van v. Cameron*, No. 10-cv-1051(AJB)(WVG), at 3-7 (S.D. Cal. Sept. 26, 2011) (slip op. involving *Avatar*, attached to Defendants' Notice of Lodging).[7] This approach is consistent with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), in which the Supreme Court held that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

Pursuant to plaintiffs' pleading requirements under *Twombly*, a court will also dismiss a claim where a plaintiff fails to allege facts showing that a defendant had access to the plaintiff's work. *E.g.*, *Clay v. Cameron*, No. 10-22203-CIV-JORDAN, at 3-4 (S.D. Fla. Oct. 20, 2011) (slip op. involving *Avatar*, attached to Defendants' Notice of Lodging: "To withstand the motion to dismiss, Ms. Clay

---

[7] *See also, e.g.*, *Campbell v. The Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010); *Rosenfeld v. Twentieth Century Fox Film Corp.*, No. CV 07-7040 AHM (FFMx), 2009 U.S. Dist. LEXIS 9305 *10 (C.D. Cal. Jan. 28, 2009); *Capcom Co., Ltd, v. The MKR Group, Inc.*, No. C 08-0904 RS, 2008 U.S. Dist. LEXIS 83836 *34 (Oct. 10, 2008); *Thomas v. The Walt Disney Co.*, No C-07-4392 CW, 2008 U.S. Dist. LEXIS 14643 *17 (N.D. Cal. Feb. 14, 2008), *aff'd* 337 Fed. Appx. 694 (9th Cir. 2009) (unpublished); *Zella*, 529 F. Supp. 2d at 1139; *Identity Arts v. Best Buy Enters. Serv's Inc.*, No. C 05-4656 PJH, 2007 U.S. Dist. LEXIS 32060 *52 (N.D. Cal. Ap. 18, 2007) (judgment on the pleadings), *aff'd* 320 Fed. Appx. 772 (9th Cir. 2009) (unpublished).

must allege, above a speculative level, that there was a 'reasonable possibility' that Mr. Cameron had access to her work."); *Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 365-66 (D. Mass. 2010) (allegations of circulation in Hollywood and book publication not enough to prevent dismissal); *Hill v. Gaylord Entm't*, 85 U.S.P.Q.2D (BNA) 1688, 1691-92 (S.D. Fla. 2008) (sending script to "publishers and literary agents for possible publication" not enough to prevent dismissal).

The contents of the works at issue in an infringement case cannot be altered by extraneous allegations. *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985) ("[T]he works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings."), *aff'd* 784 F.2d 44 (2d Cir.), *cert. denied* 476 U.S. 1159 (1986).  Thus, where substantial similarity is absent, courts dismiss with prejudice the copyright and all derivative claims.  *E.g.*, *Van*, No. 10-cv-01051, slip op. at 4-5 (dismissing copyright claims with prejudice due to futility); *Campbell*, 718 F. Supp. 2d at 1116 (lack of substantial similarity is a "defect [that] cannot be cured by amendment"); *Thomas*, 2008 U.S. Dist. LEXIS 14643 *17 ("Because this finding is based on the works themselves and not on [the] pleadings, leave to amend would be futile.").[8]

## IV.   AS A MATTER OF LAW, *AVATAR* AND *BATS AND BUTTERFLIES* ARE NOT SUBSTANTIALLY SIMILAR.

In determining whether two works are substantially similar in protected expression, a plaintiff must satisfy both an "extrinsic" test and an "intrinsic" test. *Funky Films, Inc. v. Time Warner Entm't, Inc.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  On a motion to dismiss, only the extrinsic test is relevant.  *Zella*, 529 F. Supp. 2d at 1133, n.8.  The comparison must focus on "specific, concrete

---

[8] In cases like this one involving claims of secondary infringement, underlying acts of direct infringement must exist, or the secondary claims will fail as a matter of law.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001).

elements" of expression rather than generalizations. *Bissoon-Dath*, 694 F. Supp. 2d at 1079. Where a plaintiff fails to satisfy the extrinsic test, the complaint will be dismissed.[9] *Campbell*, 718 F. Supp. 2d at 1116.

In comparing literary works and motion pictures, the plaintiff must identify "articulable similarities between plot, themes, dialogue, mood, settings, pace, characters, and sequence of events." *Funky Film*, 462 F.3d at 1077 (internal citation omitted). Only copyrightable elements of the plaintiff's work can be infringed. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Courts engage in "analytic dissection" of works to identify what copyrighted expression is at issue. *Bissoon-Dath*, 694 F. Supp. 2d at 1079. Before comparing the works, the court will dissect and filter out unprotected elements such as "[g]eneral plot ideas" and "scenes a faire, scenes that flow naturally from unprotectable basic plot premises." *Id.* (internal citations omitted).

Here, as a matter of law, *Bats and Butterflies* and *Avatar* are not substantially similar. In *Avatar*, Jake Sully, a paraplegic ex-marine, travels to the moon Pandora and, in a genetically engineered "avatar" body, learns the customs of the indigenous Na'vi tribe. During his journey, Jake falls in love with a member of a Na'vi clan, engages in counter-espionage, and eventually chooses to support the Na'vi against his employer – a violent and predatory corporation seeking to mine a precious mineral. In contrast, *Bats and Butterflies* tells the story of Joshua, a twelve-year-old schoolboy who is the subject of bullying from thuggish school mates. In fleeing the bullies, he runs through a tunnel that leads to an imaginary land inhabited by bats and butterflies, both of which look a lot like humans. Through his bravery, Joshua helps the butterflies prevail over the bats, and in the process helps the caterpillar princess Gabriella mature into a queen butterfly.

---

[9] Only where a plaintiff satisfies the extrinsic test will a trier of fact consider the intrinsic test, which focuses on the total concept and feel of the two works. *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir.), *cert. denied* 474 U.S. 826 (1985).

The operative inquiry is not how Plaintiff characterizes the works,[10] but whether, when analyzed under the extrinsic test, they are substantially similar in copyrightable expression. This entails a comparison between the works themselves, independent of the other allegations in the complaint. *See Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (approving district court's "conscientious[] outline[]" of the two works at issue); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999) (per curiam) ("In adjudicating a copyright dispute, the Court must compare the works in question."); *see also Schwarz*, 234 F.3d at 435 (court need not accept plaintiff's allegations as true where in conflict with judicially noticed material). Here, Plaintiff's claims fail under the extrinsic test: a comparison of the plot, sequence of events, characters, pace, mood, theme, setting, and dialogue in the works reveals that *Avatar* does not include any protected expression from the *Bats and Butterflies* script, and is not substantially similar to *Bats and Butterflies*.

**Plot.** A court will "look beyond the vague, abstracted idea of a general plot" when assessing similarities. *Berkic*, 761 F.2d at 1293. Thus, even where two works "share the same basic plot premise" (which is not the case here) that will be insufficient where "a closer inspection reveals that they tell very different stories." *Benay*, 607 F.3d at 625. Here, the works tell different stories. *Avatar* is about a down-and-out paraplegic ex-Marine named Jake Sully, who is promised money by representatives of the mining conglomerate RDA if he will take his dead twin brother's place and travel to the moon Pandora. Sully participates in the Avatar Program, by which human scientists use cutting-edge technology to remotely operate biological human/Na'vi hybrid bodies, called avatars. *Avatar* has two

---

[10] As noted *supra* note 5, many of the allegations in the Complaint relate to content contained in the unregistered novel, not the script, and therefore are irrelevant to the lawsuit and this motion.

primary story arcs.  First, it depicts the military-industrial machinations of RDA and its private security force, Sec-Ops, which seek to wipe out the Na'vi natives and destroy their precious ecosystem so as to have uninhibited access to unobtanium through strip mining.  Second, the movie recounts Sully's struggle to decide between his Sec-Ops allegiance and desire to have surgery to cure his paraplegia, on the one hand, and his evolving devotion to the Avatar Program, the Na'vi people, and his love interest Neytiri, on the other.  Sully spends weeks becoming indoctrinated in the Na'vi way of life and is eventually accepted (spiritually and physically) into the clan and into Neytiri's heart.  Ultimately, the Na'vi defeat Sec-Ops in battle and expel most of the humans from Pandora.

In contrast, *Bats and Butterflies* is a children's story about a boy, Joshua, who is sad over the loss of his father and is the target of incessant bullying by school mates.  He is magically transported to an imaginary land inhabited by bats and butterflies. In his new surroundings, Joshua fulfills a prophecy that he will help the princess of the butterflies, Gabriella, complete a quest to mature from a caterpillar into a queen butterfly at the Mountain of Sunshine.  But a race of vicious bats stands in Joshua's way.  The bats, and their king, Sirus, are determined to enslave the butterflies.  Joshua and other outwardly meek characters like a caterpillar named Ziggy foil the bats' efforts.  Joshua and the butterflies escape the bats, Gabriella successfully becomes a queen, and Joshua returns home more hopeful.

The plots of *Bats and Butterflies* and *Avatar* are dissimilar as a matter of law.  Indeed, the Ninth Circuit has found far more similar plots to be legally dissimilar.  *See, e.g.*, *Benay*, 607 F.3d at 625 (describing two works about American war veterans who traveled to Japan to train the Japanese army only to fall in with samurai rebels); *Funky Films*, 462 F.3d at 1081 (describing two works where fathers who operate family-run funeral homes die, resulting in the

1   subsequent operation of the homes by two sons, one of whom has been estranged

2   from the family prior to the father's death); *Kouf*, 16 F.3d at 1045-46 (describing

3   two family comedy/adventure films about people who are accidentally shrunk).

4        Plaintiff nonetheless seems to believe that the works' plots are similar

5   because both involve the ideas of alien lands, the deaths of family members, and

6   battles between groups with competing interests.  As noted above, such abstract

7   plot ideas are not copyrightable.  *See Berkic*, 761 F.2d at 1293 ("General plot ideas

8   … remain forever the common property of artistic mankind."); *Funky Films*, 462

9   F.3d at 1081 (same).  For example, Plaintiff claims that a plot similarity is that in

10  both works, characters ride on the backs of winged creatures – butterflies in *Bats*

11  *and Butterflies* and banshees in *Avatar*.  Compl. ¶20(i).  Even assuming that flying

12  on the backs of winged creatures was copyrightable, which it is not, the expression

13  in the two works is entirely different.  In *Bats and Butterflies*, the butterflies are

14  sentient creatures with personalities and the ability to speak.  But in *Avatar*, the

15  banshees are not capable of speech or higher level thinking.  Similarly, the

16  banshees and butterflies play different roles in the two works.  The butterflies are

17  actual characters in *Bats and Butterflies*, and they make up nearly the entirety of

18  the story.  In *Avatar*, by contrast, the banshees are a mode of transportation with

19  their primary plot point being an example of how Jake is able to "pass" a Na'vi test

20  by not being killed when trying to mount his first banshee.

21       ***Sequence of events.***  In *Avatar*, RDA representatives tell the paraplegic ex-

22  marine Sully that his twin brother died in a mugging and that they want him to

23  travel to a distant moon Pandora to take his brother's place in the Avatar Program.

24  After Sully agrees to do so in exchange for a big pay-day, he spends nearly six

25  years in a cryogenic sleep while traveling to Pandora.  Once he arrives, he spends a

26  significant amount of time training and befriending both Sec-Ops soldiers and the

27  Avatar Program scientists before he encounters Neytiri and the other Na'vi.  As he

28

infiltrates the Na'vi to assist Sec-Ops, he grows to care for the alien race and appreciate their ways.  After vacillating between his allegiance to Sec-Ops and his desire for money, on the one hand, and his growing affection for Neytiri and the Na'vi, on the other, Sully chooses to help the Na'vi.  He first attempts to convince the Na'vi to retreat from Home Tree to avoid confrontation with Sec-Ops.  But after the Nav'vi reject Sully's efforts and engage Sec-Ops in battle, Home Tree is destroyed and Sully is imprisoned.  This first large-scale battle does not take place until at least two-thirds of the movie has unfolded.  Upon escaping with the assistance of a Sec-Ops soldier, Trudy, Sully returns to convince the Na'vi that they can defeat Sec-Ops if the Na'vi clans join together.  A final battle, and ultimately victory for the Na'vi and the other creatures of Pandora, ensues.  Sully then permanently inhabits his avatar after a tribal ritual.

In contrast, *Bats and Butterflies* opens long after only-child Joshua's father passed away and Joshua has been suffering from the loss.  Joshua does not go into space or otherwise leave Earth.  Nor is he motivated by money or other mercenary goals.  Rather, Joshua goes into the woods because elementary-school thugs are chasing him.  Then, instead of multi-year travel through space while cryogenically frozen as in *Avatar*, Joshua crawls through a tunnel in the woods behind his house and magically and instantaneously emerges into a hidden part of the forest inhabited by bats and butterflies.  Joshua sees a butterfly initiation ritual for Gabriella and witnesses an attack launched against the butterflies by the bats.  He does not infiltrate the butterflies after a period of training.  Instead, the butterflies actively bring Joshua to their land because they believe he will fulfill a prophecy.  Moreover, Joshua never has any allegiance to the bats (unlike Jake, who initially intended to betray the Na'vi in exchange for personal gain).  Joshua steadfastly promises to assist the butterflies in their quest and never has a falling-out with the butterflies where he loses their trust.  Although there are moments where it looks

1   as if the bats will defeat the butterflies, the bats never destroy the castle, and the

2   butterflies do not have to flee their homeland and regroup, as the Na'vi did.

3   Moreover, Joshua returns home after his victory rather than transforming into a

4   butterfly in a manner analogous to Sully's transformation into his Na'vi avatar.

5   These sequences of events are radically dissimilar.  Nevertheless, Plaintiff

6   alleges similarity because each protagonist loses a family member before winding

7   up in an alien land where he learns the ways of aliens; grows to appreciate the

8   aliens and to assist them in battle; and triumphs.  Compl. ¶20.  Such abstract

9   similarities do not give rise to substantial similarity.  *See Funky Films*, 462 F.3d at

10  1077 (extrinsic test requires analysis of "the *actual concrete elements* that make up

11  the sequence of events") (emphasis added).  The allegations lack merit.

12  **Characters.**  Character traits that "flow naturally from [two] works' shared

13  premises" are not protected and cannot form the basis for substantial similarity.

14  *Benay*, 607 F.3d at 626.  Thus, the fact that both works contain fantastical species,

15  for example, does not render them substantially similar.  "[O]nly distinctive

16  characters are protectable" (*id.*), and courts must be careful "to slice or filter out"

17  mere embodiments of stock ideas.  *Bissoon-Dath*, 694 F. Supp. 2d at 1088.

18  Plaintiff  alleges that "[t]he characters in *Avatar* have the same appearance and

19  physique as those in *Bats and Butterflies*."  Compl. ¶23. In fact, nearly all of the

20  characters from *Bats and Butterflies* look entirely human, but with the addition of

21  wings and pointy ears; the Na'vi have countless alien features.[11]

22  Plaintiff also tries to compare individual characters from the works, but to no

23  avail.  *See* Compl. ¶22.  He compares Joshua, a frail 12-year old who has no

24  siblings and is grieving his dead father, with Sully, a 22-year old paraplegic former

25  marine whose brother is killed in a mugging.  A 12-year old boy is not a 22-year

---

[11] Although Plaintiff compares images of Neytiri from *Avatar* with a character named Staryana from the *Bats and Butterflies* novel, Staryana does not appear in the registered script.

26

27

old ex-marine.  Neither are the Gabriella and Neytiri characters even remotely similar.  Gabriella is an ugly, immature and often helpless caterpillar; Neytiri is a beautiful and cunning hunter and leader of the Na'vi who falls in love with Sully and helps him defeat Sec-Ops in battle.  Likewise, Galina, the queen of the butterflies who intentionally summons the child Joshua to fulfill a prophecy, is nothing like Mo'at, who serves as the spiritual leader of the Na'vi and skeptically decides to allow Sully to reside with the Na'vi and learn their ways.  Similarly frivolous are Plaintiff's other claimed similarities in character:

- Kokopelli, a butterfly knight who steadfastly protects Gabriella and Joshua in battle and leads the way to the Mountain of Sunshine bears no resemblance to Dr. Grace Augustine, a scientist who detests soldiers and designs avatar bodies for humans to inhabit in order to study the Na'vi.

- Ziggy, a small and friendly, but pugnacious, caterpillar who helps Gabriella become a queen lacks the physical strength and hostile manner of Tsu'tey, a Na'vi warrior and Neytiri's former love interest, who antagonizes Sully before finally joining him in battle.

- While Sirus, a bat, aims to enslave all of the butterflies in order to entice Sardonique to marry him, Colonel Quaritch is a human soldier of fortune who despises compromise and relishes battle.

- Sardonique, a ferocious, female bat who is obsessed with restoring the bats' cave to royal luxury by obtaining large amounts of silk lacks any resemblance to the human character Parker Selfridge, a golf-playing corporate executive who leads a strip-mining operation for unobtanium, a precious metal that is used as an energy source on Earth.

- Guss, a butterfly who serves as Gabriella's assistant and mode of transportation, is nothing like the dinosaur-like banshee that Neytiri rides.

In addition, under the extrinsic test, courts take note of characters with no counterparts in the other party's work.  *See Funky Films*, 462 F.3d at 1079 (emphasizing characters from defendant's work who were not present in plaintiff's work); *Benay*, 607 F.3d at 627 ("There are a number of important characters in the Film and the Screenplay who have no obvious parallel in the other work").  *Avatar* contains major characters that have no counterpart in *Bats and Butterflies*, including Dr. Norm Spellman (who trains with Sully in the Avatar Program and grows into a courageous fighter on the side of the Na'vi); Trudy (a Sec-Ops soldier who helps Sully); and Eytukan (the Na'vi political ruler and Mo'at's husband).

***Mood and Pace.***  *Bats and Butterflies* is a children's story with a simple protagonist who stands for good and fights on behalf of the outwardly weak and inherently virtuous (including himself) against bullies and vicious bats.  In contrast, *Avatar* tells a complex story about an emotionally damaged and conflicted protagonist who struggles to choose between his allegiance to the military and his desire for money, on the one hand, and his growing romantic love for Neytiri and affection for the Na'vi, the Avatar Program, and Pandora, on the other hand.  These differences create distinct moods.  *Bats and Butterflies* instills a consistent and straightforward feeling of allegiance to, and concern for, young Joshua and his quest on behalf of the butterflies.  Instead, *Avatar* forces the viewer to process paraplegic ex-marine Sully's mixed, and sometimes dark, emotions.

Plaintiff claims substantial similarity in pace because "the action in the stories builds then slows, tensions rise then abate, increasing in frequency and degree (in the same manner and at the same moments in each story), and ultimately culminating in epic action with a spiritual denouement."  Compl. ¶28.  This allegation is so abstract as to be meaningless and certainly does not rise to the level of substantial similarity of *protected expression*.  In fact, the pace of each work differs.  *Avatar* begins with plot and character development.  The real action and

1   battle scenes do not take place until roughly two-thirds of the way through the

2   movie.  In contrast, *Bats and Butterflies* begins with Joshua fleeing from bullies

3   and then quickly jumps into battles between bats and butterflies before introducing

4   most of the characters or explaining Joshua's presence in the imaginary section of

5   the forest.  Moreover, *Avatar* is a three-hour-plus motion picture that includes

6   more storylines than *Bats and Butterflie*s, which is a relatively short story with far

7   fewer twists and turns.  Finally, *Avatar* takes place over a period of months,

8   whereas *Bats and Butterflies* ultimately takes place in only two hours of real-time.

9   *See Campbell*, 718 F. Supp. 2d at 1115 ("The time period within which the movie

10  is set is a factor for determining the pace of a movie.").

11      **Theme.**  The works also express different themes.  Although Plaintiff alleges

12  in a conclusory fashion that "[e]ach story explores concepts of racism, genocide,

13  imperialism, and environmentalism[,]" (Compl. ¶24) these themes are expressed

14  directly in *Avatar*, but are buried in *Bats and Butterflies*, if they are present at all.

15  Moreover, such arguable similarities in the themes of the works are derived from

16  unprotectable stock elements.  *See Benay*, 607 F.3d at 627 (although "both works

17  explored general themes of the embittered war veteran, the 'fish-out-of-water,' and

18  the clash between modernization and traditions," no substantial similarity because

19  themes arose naturally from the premise of an American war veteran who travels to

20  Japan to fight the samurai); *Stromback v. New Line Cinema*, 384 F.3d 283, 297

21  (6th Cir.) (themes like "saving the world, [or] the battle between good and evil" are

22  "common themes and ideas throughout literature and are beyond any level of

23  abstraction at which copyright protection might begin to attach"), *reh'g denied* No.

24  02-2387, 2004 U.S. App. LEXIS 21704 (6th Cir. Oct. 8, 2004).  Moreover, the

25  works' themes differ in important respects.  For example, *Avatar* includes a

26  profound skepticism toward technological human society and the dangers of

27  colonialism, whereas *Bats and Butterflies* portrays a consistently positive view of

the lone human newcomer to an unfamiliar world.  *Avatar* has a central message regarding romantic love overcoming all obstacles, whereas *Bats and Butterflies* is a children's story with no emphasis on romantic love and a central theme of overcoming obstacles with courage.

**Setting.**  Other than being primarily set in unrealistic places, the settings of the works differ.  *Bats and Butterflies* takes place on Earth, in the very forest that lies near Joshua's home.  *B&B* 10-11, 25.  In stark contrast, *Avatar* primarily takes place on Pandora, a moon of a distant planet.  Moreover, while *Avatar* is set in the dystopian and futuristic environment of 2154, in which advanced weaponry and spacecraft are used in battle, *Bats and Butterflies* is set in the present day in a land where no technology is used in battle.  In addition, Pandora is populated by various Na'vi clans and countless creatures of all shapes and sizes as well as a military base populated by humans from Earth.  The imaginary land described in *Bats and Butterflies* is populated almost entirely by bats and butterflies, except for a character only described as a hermit.  Whereas butterflies live in a castle and bats live in caves, the Na'vi live in and around trees.  Courts have repeatedly found no substantial similarity in cases involving far more similar settings.  *See, e.g.*, *Funky Films*, 462 F.3d at 1080 ("Although both works take place in a contemporary, family-run funeral home, the similarities in setting end there. 'Six Feet Under' takes place in a well-maintained funeral home in Los Angeles … [whereas] 'The Funk Parlor', located in Connecticut, is in shambles."); *Benay*, 607 F.3d at 627 (no substantial similarity where both works followed Americans from the U.S. to seat of the Japanese Emperor due to dissimilarities in some specific settings within the works); *Campbell*, 718 F. Supp. 2d at 1114 (contrasting a work where "the main character finds himself stuck in a town which is surrounded by a desert landscape" with a work where "the main character is literally lost in the desert"); *Capcom*, 2008 U.S. Dist. LEXIS 83836 *29 (despite both stories taking place in "a rural

two-story mall with a helipad on top and a gun shop and music playing inside" no substantial similarity because one mall was "relatively small with a major department store and an ice rink" while the other was "a modern mega-mall without a major department store or ice rink").

*Dialogue.* "[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity." *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988). Plaintiff does not allege any similarities in dialogue between the registered script and Defendants' motion picture. *See* Compl. ¶21.[12]

In sum, because the copyright claims rely on a "compilation of random similarities scattered throughout the works" that "is inherently subjective and unreliable (*Cavalier*, 297 F.3d at 825 (internal citations omitted)), they should be dismissed with prejudice.

## V.   THE COMPLAINT FAILS TO PLEAD ACCESS.

The Complaint should also be dismissed because it does not plead that Defendants had access to *Bats and Butterflies*. To prove access, a plaintiff must establish that the defendants had a *reasonable* opportunity to read the plaintiff's work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *cert. denied* 531 U.S. 1126 (2001). A "bare possibility" of access is not enough. *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982). Thus, "mere speculation or conjecture" is insufficient to establish access. 4 M.B. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT §13.02[A] (2011) ("NIMMER").

Where, as here, a plaintiff seeks to establish access through a chain of submissions, he must plead that a "particular chain of events exists by which the defendants might have gained access to the work" from anyone with whom the Plaintiff shared it. *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d

---

[12] Although the Complaint includes allegedly similar dialogue, the dialogue cited is not contained in the registered script and in any case is not similar.

500, 515-16 (S.D.N.Y. 2008).  Where a plaintiff fails to allege such specific facts, the infringement claim should be dismissed for failure to plead access.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.") (internal citations omitted).[13]

In *Feldman*, 723 F. Supp. 2d at 365-66, the plaintiff in an infringement case alleged that the defendants had access to her books because she had made them available on her website and had promoted them on a radio show.  She also alleged that her ex-boyfriend, who "had contacts in Hollywood," could have provided her books to the defendants.  *Id.* at 365.  The court granted the defendants' motions to dismiss because these allegations failed to suggest more than a "bare possibility of access."  *Id.* at 366.  Similarly, Plaintiff here merely alleges that he distributed the work to "numerous individuals in the film industry."[14]  Compl. ¶13.  As in *Feldman*, such a claim is insufficient to withstand a motion to dismiss.  *Cf. Clay*, No. 10-22203-CIV-JORDAN, slip op. at 3 ("Although Ms. Clay has alleged that her work was widely circulated, she has alleged no nexus between her circulation of the work in 1990 and Mr. Cameron."); *Hill*, 85 U.S.P.Q.2D (BNA) at 1691 (allegation that plaintiff sent the work to "publishers and literary agents for

---

[13] In some cases, proof of access is not required because "striking similarity" exists between two works which are so similar that copying is the only logical explanation for the similarity.  *See Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1113, n.1 (C.D. Cal. 2005).  Here, as discussed above, the works are not even substantially similar, and certainly not strikingly similar.  Establishing striking similarity is a very high threshold that Plaintiff simply cannot meet.  *See* 4 NIMMER § 13.02 ("What is required is that the similarities in question be so striking as to preclude the possibility that the defendant independently arrived at the same result.").

[14] Plaintiff also alleges that Romar Entertainment and Billy Zane, Union Entertainment and Richard Leibowitz, and Brian Singer received his script (Compl. ¶13), but never explains how any of them provided access to Defendants.

possible publication" not enough to avoid dismissal); *Merrill v. Paramount Pictures Corp.*, Case No. CV 05-1150 SVW (MANx), 2005 U.S. Dist. LEXIS 454012005 **4, 20-26 (C.D. Cal. Dec. 19, 2005) (summary judgment for defendants where plaintiff claimed he "mailed copies of his script … to 'any film studio or record label address he could find,'"); *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal 1984) (requiring a "nexus between the defendant and the individual possessing knowledge of the plaintiff's work"). For this second reason, Plaintiff has failed to state a claim.

## VI.   THE SECONDARY LIABILITY CLAIMS SHOULD BE DISMISSED.

Plaintiff's Second and Third Claims for Relief are for contributory copyright infringement and vicarious copyright infringement, respectively.[15]  A plaintiff cannot succeed on such claims without proving direct infringement. *Goldberg v. Cameron*, 787 F. Supp. 2d 1013, 1018 (N.D. Cal. 2011).  Plaintiff's claims fail as a matter of law because, as discussed above, *Avatar* does not infringe Plaintiff's alleged rights in *Bats and Butterflies*, and there is thus no direct infringement.

## VII.   CONCLUSION

Defendants respectfully ask the Court to dismiss Plaintiff's Complaint without leave to amend.

DATED: March 22, 2012

MITCHELL SILBERBERG & KNUPP LLP

By: s/ Robert H. Rotstein
Robert H. Rotstein
Attorneys for Defendants,
James Cameron, Lightstorm Entm't, Inc.,
Twentieth Century Fox Film Corp., Dune
Entm't LP

---

[15] Vicarious liability exists when the defendant has both the right and ability to supervise the infringing conduct and an obvious and direct financial interest in the exploitation of copyrighted materials.  3 NIMMER §12.04[A][2].  "A party 'who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'"  *Id.* §12.04[A][3].