1  ROBERT H. ROTSTEIN (SBN 72452),
   rxr@msk.com
2  ELAINE K. KIM (SBN 242066),
   ekk@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  Attorneys for Defendants,
   James Cameron, Lightstorm Entertainment, Inc.,
7  Twentieth Century Fox Film Corporation,
   Dune Entertainment LP

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| ELIJAH SCHKEIBAN, an individual, | CASE NO.  CV 12-0636-R (MANx) |
| Plaintiff, | Honorable Manuel L. Real |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| JAMES CAMERON, an individual; LIGHTSTORM ENTERTAINMENT, INC., a California corporation; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; DUNE ENTERTAINMENT LP, a Delaware limited partnership, | Time:  10 a.m.<br>Date:  May 7, 2012<br>Ctrm.:  8 |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY PURSUANT TO FED. R. CIV. P. 12(B)(6)**

4590476.4/42040-00007

## I. INTRODUCTION

Plaintiff's self-published *Bats and Butterflies* ("*B&B*") as a matter of law is not substantially similar in copyrightable expression to Defendants' acclaimed movie *Avatar*. Nothing in Plaintiff's Opposition Memorandum ("Opp.") establishes otherwise. The Opposition almost entirely ignores Plaintiff's *Bats and Butterflies* script[1] – the *only* work registered at the time that Defendants filed their Motion ("Mot.")[2] – thereby conceding that his script and *Avatar* are not substantially similar. Rather, Plaintiff's Opposition relies primarily on his self-published novel[3] – also called *Bats and Butterflies* – for which he applied for copyright registration only one day before filing his Opposition.[4] Because neither the novel nor the script is substantially similar to *Avatar* in protected expression, the Complaint should be dismissed without leave to amend.[5]

Plaintiff's Complaint should also be dismissed because it does not (and cannot) allege that Defendants had access to either of his works. His Opposition merely repeats the speculative access allegations of the Complaint, ignoring the

---

[1] Ex. A to Burchette Decl. in support of Defendants' Request For Judicial Notice.
[2] Because a plaintiff in a copyright infringement case may sue only on registered works (17 U.S.C. §411(a)), Defendants' Motion focused on Plaintiff's script.
[3] Ex. A to Schkeiban Decl. in support of Plaintiff's Request For Judicial Notice.
[4] While the two versions of *B&B* include some of the same characters and similar plots, there are also differences. For example, the novel has the protagonist, Joshua, mysteriously transported from his parents' house to a distant planet that was previously discovered by his dead father (pp. 36, 47), whereas the script (pp. 10-11) has Joshua flee from bullies into the woods behind his house only to find himself in a fantastical land that is not a different planet. At the end of the script (pp. 113-114) Joshua returns home to his mother, whereas Joshua's mother is dead in the novel (p. 5) and the story concludes (p. 235) with Joshua becoming a butterfly and remaining on the distant planet. Nevertheless, under neither version of *B&B* can Plaintiff state a claim upon which relief can be granted.
[5] Plaintiff's Opposition also purports to rely on certain other vaguely identified works, which Plaintiff calls his "franchise of products." However, because these materials have not been registered with the United States Copyright Office, they cannot provide the basis for an infringement action. *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1247 (2010).

1  critical holdings of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and

2  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), which mandate dismissal.

## II. PLAINTIFF MISCONSTRUES THE APPLICABLE LAW.

Plaintiff's Opposition is rife with legal errors. First, Plaintiff relies (Opp. 3-4) on outdated law in asserting that the Federal Rules' liberal pleading standards save his claims. Under current law, a court must not accept legal conclusions as true. *Iqbal*, 129 S. Ct. at 1949. Nor may a court accept, as pled here, "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, *quoting Twombly*, 550 U.S. at 557. Instead, "a complaint *must* contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (emph. added), *quoting Twombly*, 550 U.S. at 570. Moreover, a "court need not accept as true [] allegations that contradict facts that may be judicially noticed by the court." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

Second, there is no merit to Plaintiff's assertion (Opp. 8) that motions to dismiss for lack of substantial similarity are rarely granted. *See* Mot. 10 (citing cases resulting in dismissal).[6] Similarly, courts have, under Rule 12(b)(6), dismissed complaints that fail to plead access sufficiently. *See, e.g.*, *Clay v. Cameron*, No. 10-22203-CIV-UNGARO, slip. op., 4-7 (S.D. Fla. Apr. 6, 2012) (dismissing infringement claim against James Cameron with prejudice due to inadequate allegations of access where plaintiff alleged *Avatar* infringed her work and asserted that she "circulated the work within the motion picture industry").[7]

Third, Plaintiff asserts that the Court should disregard the concrete, substantial differences between the works in favor of focusing on abstract

---

[6] There is no question that the extrinsic test "may often be determined as a matter of law." *Funky Films, Inc. v. Time Warner Entm't, Inc.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (internal citations omitted).

[7] Ex. A to Defendants' Notice of Lodging.

similarities. Opp. 20.[8] Ninth Circuit law says otherwise. *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 626 (9th Cir. 2010) ("The most similar characters in the two works are the American protagonists, but the *differences* between them at least equal the similarities.") (emph. added); *Funky Films*, 462 F.3d at 1078 ("At first blush, these apparent similarities in plot [in the works at issue] appear significant; however, an actual reading of the two works reveals greater, more significant *differences* and few real similarities … .") (emph. added).

Finally, contrary to Plaintiff's contention (Opp. 8), he cannot rely on the so-called "inverse ratio rule," which posits that where a defendant *concedes* access, a plaintiff's burden of proving substantial similarity is less stringent. Far from conceding access, Defendants have shown that Plaintiff has not plead it. The inverse ratio rule is thus inapplicable. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003) ("We note that in other circumstances where we have applied the [inverse ratio] rule, concession of access by the defendant to the plaintiff's copyrighted work was a prominent factor in our analysis.") (citations omitted).

### III.   THE WORKS ARE NOT SUBSTANTIALLY SIMILAR.

####    A.   *Plaintiff Improperly Attempts to Combine Separate Works.*

As noted above, Defendants' Motion focused on the *B&B* script because that was the sole *registered* work on which the Complaint relied. However, Plaintiff has now applied with the Copyright Office to register his *B&B* novel.[9] Because

---

[8] Ironically, Plaintiff also accuses Defendants of couching Plaintiff's allegations in broad generalities and glossing over concrete elements when it is Plaintiff who runs from the specifics of the works and instead uses descriptions so abstract they render the works hardly recognizable.

[9] Defendants assume in this Reply that Plaintiff applied to register the entirety of the novel he attached to his Request For Judicial Notice. However, Plaintiff did not attach his application. Thus, Defendants cannot confirm whether Plaintiff is seeking to protect the novel, which states it is a second edition, as merely a derivative work based on an unregistered first edition. If so, content from the first edition may not be covered by Plaintiff's application and may not be properly before the Court. Also, the Copyright Office may still deny the application.

1  Defendants' Motion thoroughly addresses the dissimilarities between the script and
2  *Avatar*, and because the Opposition relies on the *novel* rather than the script, the
3  section below focuses on the lack of similarity between the *B&B* novel and *Avatar*.

### B. *Plaintiff Fails to State a Claim Under the Extrinsic Test.*

In discussing substantial similarity, Plaintiff ignores the most recent Ninth Circuit cases on the extrinsic test, namely, *Bissoon-Dath v. Sony Comp. Entm't Am., Inc.*, 694 F. Supp. 2d 1071, 1078 (N.D. Cal. 2010), *aff'd and adopted by*, 653 F.3d 898 (9th Cir. 2011) (published without opinion), *Benay*, 607 F.3d at 624, and *Funky Films*, 462 F.3d at 1081. Plaintiff's attempt to divert the Court's attention from these cases is not surprising, as each of them involved works far more similar than those at issue here and yet each held that the plaintiff could not, as a matter of law, prevail. The applications of the extrinsic test in those controlling cases demonstrate that Plaintiff cannot state a claim upon which relief can be granted.

*Plot and Sequence of Events*. Plaintiff suggests (Opp. 9-15) that the works are substantially similar in plot and sequence of events because: (i) a bullied young boy with a fractured arm in *B&B* and a paraplegic ex-Marine wounded in battle in *Avatar* are "weak in the eyes of others"; (ii) family members die early in the works; (iii) characters leave earth and are captured by the inhabitants of the new planet,[10] arrive in a forest, face danger, and encounter floating creatures; (iv) female leaders tell their daughters to give the protagonist another chance; (v) Joshua in *B&B* forms a bond with a caterpillar princess and Jake Sully in *Avatar* falls in love with Neytiri of the Na'vi; (vi) there are murderous villains (bats in Plaintiff's work, a human in *Avatar*); (vii) the protagonists learn the beauty of their surroundings and become inspired by it; and (viii) there are battles in which a female character is injured. These claimed "similarities" are not even similar in

---

[10] Joshua in *B&B* leaves earth only in the novel, not in the script (pp. 10-11).

4

**REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY PURSUANT TO FED. R. CIV. P. 12(B)(6)**

idea, much less at the concrete level of expression. *See Funky Films*, 462 F.3d at 1077 (extrinsic test requires analysis of "the actual concrete elements that make up the total sequence of events"). For example, there is no similarity, much less the legally-required *substantial* similarity, between a child who fractures his arm after being pursued by bullies and an ex-marine who loses the use of his legs in battle. Moreover, the long blood feud between the nonhuman bats and butterflies in *B&B* bears no resemblance to the avaricious attempt of the human villains in *Avatar* to obtain Unobtanium, a precious mineral, through the use of violence against the native Na'vi. And, in *B&B*, while Gabriella, the caterpillar princess, spins an actual cocoon to protect herself from injury (p. 201), Grace, the human scientist in *Avatar*, receives protection from the Na'vi and a sacred tree.

Moreover, a court will "look beyond the vague, abstracted idea of a general plot" when assessing similarities (*Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.), *cert. denied*, 474 U.S. 826 (1985)) and ask whether two works tell "fundamentally different stories." *Benay*, 607 F.3d at 626. *See* Mot. 14-16. Plaintiff's contrived examples of similarities are mere uncopyrightable abstractions taken out of context. Plaintiff's Opposition nowhere purports to summarize the stories of the respective works at issue. As summarized in Defendants' Motion, the story of *Avatar* and the story of *B&B* are completely different. Plaintiff cannot state a claim by relying on generalized allegations of similarities.[11]

---

[11] Indeed, the Ninth Circuit has found plots far more similar than those at issue here to fail the extrinsic test. *E.g.*, *Benay*, 607 F.3d at 625 (describing two works about American war veterans who traveled to Japan to train the Japanese army only to fall in with samurai rebels and undergo personal transformations); *Funky Films*, 462 F.3d at 1081 (describing two works where fathers who operate family-run funeral homes die, resulting in the subsequent operation of the homes by two sons, one of whom has been estranged from the family); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045-46 (9th Cir. 1994) (describing two family films about people who are accidentally shrunk).

***Characters***.  Nothing in Plaintiff's Opposition identifies any articulable and specific similarity between characters from the works that would satisfy the extrinsic test.  *See Benay*, 607 F.3d at 626 ("Only distinctive characters are protectable."); *Bissoon-Dath*, 694 F. Supp. 2d at 1088 (courts "slice or filter out" embodiments of stock ideas).  As noted, a "frail thirteen year old boy with a broken arm and whose parents are killed in a car accident" (Opp. 18) is hardly similar to Jake Sully, the battle-hardened, paraplegic ex-marine whose brother is killed in a mugging.  Neither is there a concrete similarity between Gabriella (*B&B* 65), an ugly, helpless caterpillar princess, and Neytiri (*Avatar*), the beautiful hunter and leader of the Na'vi who falls in love with Sully and helps him defeat Sec-Ops.  Likewise, Queen Galena in *B&B* (pp. 62-63), a butterfly, and the Na'vi Mo'at are not similar simply because they are "spiritual leaders."  The butterfly Kokopelli in *B&B* (p. 64) and the human scientist Grace Augustine are not "similar" under the copyright law simply because in the broad sense they might be "advisors."  Moreover, *B&B*'s, Sardonique, the cunning and vicious bat who covets silk (pp. 95-97), is nothing like *Avatar*'s Parker Selfridge, a wimpy corporate executive.[12]

Finally, Plaintiff essentially ignores characters that have no counterpart in the other party's work.  *See Benay*, 607 F.3d at 627 ("There are a number of important characters in the Film and the Screenplay who have no obvious parallel in the other work").  Although Plaintiff asserts that the characters without counterparts are "minor," Dr. Norm Spellman (who trains with Sully in the Avatar

---

[12] Plaintiff also claims (Opp. 20) an image of a bat named Staryna taken from some unidentified work of Plaintiff's is substantially similar to an image of Neytiri from *Avatar*.  This is a red herring.  The image of Staryna is not part of Plaintiff's script or novel, and is thus an unregistered work on which Plaintiff cannot base his suit.  Accordingly, the illustration may not be considered.  Even if the image was before the Court, however, the images are not similar.  Beyond having a vague resemblance to human women with pointy ears, the depictions differ.  Finally, even if the images were similar, which they are not, any fleeting similarities would not constitute substantial similarity sufficient to withstand this motion to dismiss.

Program and fights alongside him); Trudy (a Sec-Ops soldier who helps Sully); and Eytukan (the Na'vi political ruler and Mo'at's husband), play significant roles in *Avatar*. Similarly, *B&B* contains characters with no alleged counterparts in *Avatar*. For example, Plaintiff does not identify characters from *Avatar* that are allegedly similar to Gray Bat, the loyal leader of Sirus' army (pp. 97-102, 187) or Saber, a ruthless slave bat (pp. 150, 189, 219) who kills Sardonique for Sirus.

   ***Dialogue***. Plaintiff purports (Opp. 15-17) to provide examples of substantially similar dialogue. These examples do not even come close to satisfying the extrinsic test. *See Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988) ("[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity."). For example, Plaintiff compares the dialogue, *It has always been man's dream to fly and now I live that dream* (*B&B*), with *I started having these dreams of flying* (*Avatar*). These fragments are not even conceptually similar. Jake says the line from *Avatar* at the start of the film to describe his experience of being paralyzed and actually dreaming of flying. In contrast, Joshua says the line from *B&B* at the end of the novel (pp. 222-23, 235) when he has transformed into a butterfly. Joshua's reference to dreams refers to the daydreams or hopes of other men, not his actual dreams.[13]

   ***Pace and Mood***. As discussed in detail in Defendants' Motion, *B&B* is a children's story with a simple protagonist who stands for good and fights on behalf of the outwardly weak and inherently virtuous (including himself) against bullies and vicious bats. In contrast, *Avatar* tells a complex story about an emotionally damaged and conflicted protagonist who struggles to choose between his

---

[13] Plaintiff's other examples are equally abstract , consistently confusing unprotected idea with expression. *See Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1185 n.67 (C.D. Cal. 2001) ("Plaintiff again confuses the 'idea' conveyed by a particular piece of dialogue with the protectable 'expression' thereof. The cited text is not substantially similar for its own sake, not to mention that even if it were a few overlaps would not make the entire dialogue similar.").

allegiance to the military and his desire for money, on the one hand, and his growing romantic love for Neytiri and affection for the Na'vi, the Avatar Program, and Pandora, on the other hand. In his Opposition, Plaintiff merely argues (Opp. 21) that the stories build slowly, then tensions rise and abate, and that both stories culminate in epic action with a "spiritual denouement." Such broad generalities hardly support a claim for substantial similarity of concrete protected *expression*.

*Theme*. The works' themes are completely different. Mot. 21-22. And, even if the works were thematically similar, which they are not, similarity in theme alone is insufficient to establish substantial similarity. *E.g.*, *Weygand v. CBS, Inc.*, 43 U.S.P.Q.2D (BNA) 1120, 1126-27 (C.D. Cal. 1997). Plaintiff's contends (Opp. 20-21): "each work tells the story of a wounded male character, stripped of his only family and without direction in life, who leaves his earthly home and travels through the cosmos, where he befriends the planet's endogenous species, undergoes significant physical, spiritual, and personal transformations, defeats those who seek to destroy the species for personal gain, and ultimately becomes one of the aliens."[14] While Plaintiff characterizes his description as "theme," it is in fact "plot." However, these allegedly similar plot elements are so abstract that, like common literary "themes," they too are merely unprotectible ideas. *See Berkic*, 761 F.2d at 1294 ("[D]epictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other [] are [] unprotectible."). Plaintiff also argues that both works explore concepts of racism, genocide, imperialism, and environmentalism. These concepts are hidden in *B&B*, if they are there at all. Further, such abstract descriptions of theme do not give rise to

---

[14] In the *B&B* script, Joshua remains a human (pp. 113-14); in the novel (p. 235), he becomes a butterfly. Either way, the work is not substantially similar to *Avatar*, in which Jake merges with his genetically engineered Na'vi body.

8

**REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY PURSUANT TO FED. R. CIV. P. 12(B)(6)**

substantial similarity of expression under the extrinsic test.  Rather, these themes flow naturally from the idea of characters travelling to inhabited parts of outer space and are thus unprotectible.  *See Benay*, 607 F.3d at 627 (Themes of "the embittered war veteran, the 'fish out of water,' and the clash between modernization and traditions . . . arise naturally from the premise of an American veteran who travels to Japan to fight the samurai.").

***Setting***.  Defendants' Motion establishes (Mot. 22-23) that Plaintiff's script and *Avatar* differ in setting.  His Opposition focuses only on his novel and argues that both it and *Avatar* take place on lush alien planets that are rich with minerals; have large trees; and are inhabited by dangerous people.  However, at a concrete level of expression, the settings of the works differ markedly.  Pandora in *Avatar* is a moon that is well known on Earth as a mining colony, while Altair in *B&B* is a mysterious planet -- discovered by Joshua's father (p. 36) – that suffered an apocalyptic event (p. 38) after a nearby sun burned out.  Furthermore, while humans exploit and strip mine Pandora because of its deposits of Unobtainium, a darkly colored mineral that fuels an increasingly industrial and technological society on Earth, the butterflies use shining, magical crystals that fall from the sky (pp. 39, 64, 103, 116) to protect themselves from the bats.

***Alleged "Combination" of Similarities***.  Plaintiff argues (Opp. 9, 15) that allegedly similar uncopyrightable elements, in combination, satisfy the extrinsic test.  Plaintiff is mistaken.  *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir.) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement *original* enough that their combination constitutes an original work of authorship.") (emphasis in original), *cert. denied*, 540 US 983 (2003).  Here, "the sequences of elements, and the relationships between them, are entirely dissimilar." *Bissoon-Dath*, 694 F. Supp. 2d at 1091.  Indeed, Plaintiff relies only on "random

similarities scattered throughout the works." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 825 (9th Cir. 2002). The Complaint should be dismissed with prejudice.

### IV. PLAINTIFF HAS FAILED TO PLEAD ACCESS.

Plaintiff failed to plead access because he made only vague and speculative allegations that he sent his work to individuals in the entertainment industry. *See* Mot. 23-25. Plaintiff's Opposition now asks the Court for leave to amend so he can add another vague and speculative allegation that an actor, Billy Zane, spoke with Plaintiff "about [James] Cameron's *possible* interest in the Work." Opp. 7 (emph. added). This proposed amendment is insufficient under the applicable "facial plausibility" standard. *See Iqbal*, 129 S. Ct. at 1949 ("The plausibility standard . . . asks for more than a sheer *possibility* that a defendant has acted unlawfully.") (emph. added). To avoid dismissal, Plaintiff must allege more than an undefined connection between Mr. Zane and Mr. Cameron and an opaquely worded assertion that Mr. Zane said he *thought* Mr. Cameron *might* be interested in *B&B*. *See Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981) (finding insufficient a plaintiff's contention that "the original author of [the defendants'] movie screenplay, *may* have received a copy of her book from Jack Neuman . . . ") (emph. added), *aff'd*, 698 F.2d 966, 967 (9th Cir. 1982).[15]

DATED: April 23, 2012         MITCHELL SILBERBERG & KNUPP LLP

By: s/ Robert H. Rotstein
Robert H. Rotstein
Attorneys for Defendants

---

[15] *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059 (9th Cir. 1981) is not to the contrary. In *Kamar*, an issue of fact as to access existed because the same toy manufacturers produced both the plaintiff's toys and the defendant's toys. *Id.* at 1060, 1062. Plaintiff here does not claim he can allege that he hired Mr. Zane to create a movie based on the *B&B* script before Mr. Cameron hired him to create a movie based on the *Avatar* script. Instead, Plaintiff merely claims that Mr. Zane received a copy of *B&B* and speculated that it was possible that Mr. Cameron would be interested in it. *Kamar* is distinguishable.